Lake Eugenie versus BP, let me just say we reconstitute the panel for the reason of a lake determined conflict. I don't need to tell you all, this case is very complex and with all the different holdings and related parties and so on and so forth, it does not immediately become evident who is simply the fact. The normal recusal kind of mechanisms don't seem to work because of just the sheer complexity of this case and all that stuff. As you know, this case was argued before and the lake discovered conflict caused it to be pushed up to this panel. Then in the configuration of the panel, it was determined another conflict. I just want to be transparent, the reconstitution has nothing to do with picking judges, it's a function of working through all these filings and people determining either through relationships of theirs or somebody else, holdings, et cetera, that there's conflict. Rather than push you to another oral argument session with another panel, I chose to reconstitute the panel so we could keep it on schedule for an argument today as opposed to some time period down the road. I just want you to understand that while there's a different panel, it's not any sort of cherry picking or gerrymandering or whatever, it's just the stuff it's made of. Hopefully, we get through this panel without determining any other conflicts and for good or ill, we'll be the ones to rev it up. All right, that said, Mr. Hung. Thank you, Your Honor, and may it please the court, Thomas Hungar for the BP appellants. The district court committed legal error in barring restitution of excessive and unjustified payments made over BP's objections pursuant to two separate district court rulings that have now been overturned. Centuries of precedent confirm that restitution is appropriate in these circumstances. As this court recognized in Inland Credit, it is the power and duty of the court to restore to a litigant what he has lost by an erroneous judgment. Restitution is necessary here on two independent grounds, first, because the windfall payments were compelled by court orders that were later overturned, and second, because the payments were made over BP's objections pursuant to a disputed contract interpretation, and BP's position on that issue was ultimately vindicated. Under the restatement and the case law cited in our briefs, which class counsel does not even dispute, restitution is warranted. Equity will not suffer a wrong without a remedy, and a wrong has been done here to the tune of hundreds of millions of dollars that should never have been paid. It is undisputed that these payments were inappropriate under the properly construed settlement agreement and were the direct result of two erroneous district court determinations that were subsequently overturned. The district . . . How much involvement did the district court have in drafting the settlement? I mean, the settlement was between the parties, was it not? Was the court involved? I think the court ultimately approved it, but the actual settlement itself was between the parties. Am I correct? Where do we draw the line? I guess I'm looking for court ordered this, or how much of it was BP being involved in drafting the settlement? Was it ordered by the court, or was it BP and the others figuring out by themselves without the court's involvement? Where do we draw the line? Payments issued here were unquestionably the result of the district court's orders, two separate district court orders, but for both of them, the money would not have gone out the door. The first order being the parties . . . BP disagreed with the claims administrator's interpretation of the provision that issued, the underlying provision, Exhibit 4C of the agreement, which the claims administrator was using to erroneously calculate awards. BP raised that with the district court. The district court initially agreed with the claims administrator and thereby allowed the In addition, BP has the right under the agreement, under Section 6 and 18 of the agreement, BP reserved the right to go to the court and challenge awards that were inappropriate under this process that the agreement set forth, and remember this is a Rule 23 district court approved, district court entered agreement, so it's not just a private side agreement between the parties. The district court had, excuse me, BP had reserved the right to go to court to challenge erroneous payments, and the district court refused to permit BP to do that, and ultimately BP appealed from that order, that separate order, and obtained a reversal from this court in the non-profit decisions and the rules decision issued on May 8, which I referenced. On the issue of that appeal, I know that was a major focus of the last oral argument. Once Judge Barbier said, globally, I'm not going to allow, consider appeals in these cases, why couldn't you have docketed that global ruling in an individual claimant's case and then appealed here, just like in the non-profit cases, where he'd also issued that global ruling barring appeals, and yet you docketed the, you docketed his ruling in individual cases and got that up to the circuit? Well, that's very different, Your Honor. In the non-profit appeals, because we were able to bring requests for judicial review to the court under Section 6 of the agreement, the court denied those requests. The only problem was we couldn't appeal because the court refused to put those denials on the docket, but we had a piece of paper from the court, review denied for this award. So what we did is we docketed those pieces of paper with respect to a specific award and filed a notice of appeal, and this court in those cases said, that's not the way it's supposed to work, but we'll allow that under the circumstances here, because you do have a piece of paper. Didn't you have a piece of paper here? I understand it wasn't for claimant X, Y, Z, but didn't you have a piece of paper here where he said, I'm not allowing appeals in any of these matching cases? We did have that piece of paper, that was an order about the rules, and we appealed from that order. We filed an appeal, we brought it to this court, and on May 8th of this year, this court reversed. Right, but why couldn't you have filed that in individual cases and appealed those individual cases, docketing the order like you did in the non-profits, because I understand he wasn't docketing those orders, but in the non-profits, you docketed yourself the order, and then took appeal. Well, I think it would, I mean, let's face it, as this court said in the non-profit decisions, the process that was followed there was quite a stretch, given the way it's supposed to work. This would have been a further stretch, because remember, the May 20th order that you're talking about isn't about any of these awards. All it says is, don't bring these to me, I won't even address them. So it's not like we had, and indeed, the vast majority of these awards have not even been issued at the time that order was entered, so it would be quite bizarre to say that BP could appeal based on an order that doesn't refer to an award that hasn't yet been issued yet, you know, six months later. And finally, if BP has that right, it still has that right, because these individual awards have not been docketed, so there's still nothing on the docket pertaining to these individual awards, most of which were entered after May 20th, and of course that award has been overturned. But again, remember, BP's right to restitution did not arise until after that time, in any event, because it didn't arise until this court had reversed, and then it had gone back to the district court, and the district court had remanded to the claims administrator, and the claims administrator had come up with a new policy, policy 495, which was entered and approved by the district court in May of 2014, so BP's right to restitution and its ability to show unjust enrichment hadn't even become ripe until May of 2014, and BP filed this claim for restitution in June of 2014. So we appealed at every possible opportunity, and we filed our request for restitution essentially as soon as we had the ability to show that, in fact, under the corrected policy resulting from the reversal of the matching order, BP was entitled to restitution. But you wouldn't even be in a world of needing restitution if you could have got individual cases up here, then it just, the cases would have still been alive, and the awards would have been altered to reflect the requirement that conventions match. We still would have been in need of restitution, Your Honor, because to the way that the district court's rules on judicial review work, if you're allowed to file a request for judicial review, that stays the payment of the money until the request for judicial review is resolved. But because we weren't allowed to file a request for judicial review, we couldn't stop the money from going out the door. We tried every way we could to try, and we filed motions to enjoin the money going out the door, the district court denied that. So we tried every way we could, but we had no ability, because of the district court's multiple orders that have now been overturned, we had no ability to stop the money from going out the door. So under any circumstance, we'd be seeking restitution. Our right to restitution became concrete in May of 2014. We sought restitution the following month. So again, BP has done everything it could to try to recover this wrongfully paid money. The money was unquestionably paid as a result of erroneous orders of the district court, not one, but more than one, and in fact, you could include not only the two I've mentioned, but also the district court's refusal to grant the injunction pending appeal. So order after order of the district court, all of which have now been overturned, caused this money to go out the door. That's the classic case for restitution under the Supreme Court cases we cite, under Section 18 of the Restatement. The district court's only reason for denying restitution was its reliance on the release, but that reliance was incorrect for multiple reasons. The first being, this court has already rejected the release-based arguments in the final rules and non-profit decisions referenced in our 28J letters. In fact, in those cases, class counsel and individual claimants relied on the same provisions of the release at issue here and made the same arguments in an effort to prevent BP from obtaining judicial review of individual awards after they'd been paid. Class counsel argued that the claimants, quote, signed this release and went on their way. The settlement agreement provides BP no right to force them back, close quote. Claimants argued that, quote, the release signed and submitted in exchange for payment and receipt of settlement funds forecloses this appeal by making the payment on receipt conclusive as to the claims at issue, close quote. This court rejected those arguments. In footnote four of the non-profit decision, the district court's order barring restitution is therefore contrary to precedent and must be reversed. In addition, even leaving aside the fact that precedent compels that result, the district court's reliance on the release is wrong because the release just doesn't lead to the conclusion that the district court reached. In the release, claimants released their claims against BP. BP nowhere released its rights to restitution, to judicial review, or to have the settlement agreement enforced according to its terms. To the contrary, as I've noted in sections six and 18 of the agreement, BP reserved the right to seek judicial review to challenge excessive awards, which is the right that is a consequence of which it needs to seek restitution. Only the district court's erroneous rulings, not the terms of the settlement and release, resulted in the unjust enrichment at issue here. Class counsel point to various provisions in the agreement, but they establish only two basic points. First, that the agreement and releases would remain effective regardless of specific potential future events, none of which occurred and which are completely irrelevant here. Taking your point about the release, but the settlement agreement itself is enormous, to put it mildly, in terms of the number of pages and so forth and all that, but it certainly appeared that the parties, being sophisticated on both sides and all that, have just kind of a range of contemplated circumstances of possible change, either due to legal rulings or whatever, but it strikes that the parties intended, ostensibly, that though there might be future developments not being unseen, legal otherwise, et cetera, et cetera, the point was for there to be irrevocability to this whole notion. I know that's somewhat of an oversimplification, but it certainly strikes one, given the language in it, that there was some thought there could be legal developments, all kinds of developments, that not known in the present, but that it was not meant to affect the irrevocability by either side. I don't understand your argument about the release was between you and the claimants and not getting out, but . . . It was irrevocable, but . . . Your Honor, we're not trying to revoke the agreement, we're trying to enforce the agreement. It's important to look at the actual language, the specific language in the agreement. First of all, there is specific language that talks about, for instance, the court hasn't yet given final approval. If the court approves it, an appellate court reversed the approval. It's possible that the terms of the proposed settlement may change, and then it says, none of those uncertain future events will affect you. That's from the release, and that's the language that the district court seems to have relied primarily on, but none of those uncertain events occurred, and none of those uncertain events has anything to do with what we're talking about here, nor is BP trying to revoke the settlement agreement or the release, which is what the other language I think your Honor was referring to talks about. We're not trying to revoke those provisions, we're trying to enforce those provisions. And remember, all parties agree that when an individual claimant is issued an award by the settlement program and receives the release, the draft individual release that comes as part of that award notice, and the claimant at that time has the right, if they so choose, to sign the release, and that means regardless of what might happen down the road if the settlement were later overturned, they're still going to get whatever money is coming to them under the terms of the settlement agreement. But all parties agree. It's not the amount of money stated in the release, because there are the rights of appeal for both parties, and the right to seek judicial review, and only at the end of that process is that amount due. Thank you. I had a question about the injunctions, or some practical questions. There's hundreds of claimants who were overpaid, according to your analysis. You want the injunction to apply to their entire award, or just the overage? And second of all, are you identifying specific property, or is it just an injunction saying don't spend $360,000, you need to keep it in your bank? So the request for the injunction relates specifically only to the 200 claimants for which we were able to calculate overpayments, and only to the overpayment amount. We're very clear, we're not trying to seek an injunction with anything else, and only with respect to the property at issue, that is the money they received or the proceeds of it. So just, it would not be, if somebody had burned the money up, right, and that money was gone, and there were no proceeds of it for the injunction to attach to, they wouldn't be subject to the injunction. But undoubtedly, I mean, they didn't burn it, but undoubtedly it's been commingled, it's been spent. I mean, are they required to go conduct an extensive tracing analysis to see where, I mean, it gets into these issues the other side raises about notice, and it just doesn't seem like it's a very specific injunction if we were to issue it, to just say, wherever that $200,000 still is, don't use it anymore. But, Your Honor, some of these awards, remember, were in the millions of dollars, the excessive awards. I think the largest one is $14 million that the claimant wasn't entitled to. They could have bought a yacht with that $14 million. And if they bought a yacht with that $14 million, EP should be, is entitled to an injunction to restrain them from dissipating those assets until the correct amount can be calculated by the claims administrator, reviewed by the district court if necessary, and so forth. Is it just an accounting error, using this matching term, is it easy to go back and determine if there was an unjust enrichment or overpayment, how much each of these individual companies owes, or is it a more involved situation of looking at every specific payment and whether there was overpayment and how much it was? I think it's somewhere in between, but I think the simplest way to respond to your question, Your Honor, is when this court decided Deepwater Horizon won, and then the district court on remand concluded that a mistake had been made, and that the interpretation of the agreement needed to be changed, and ultimately, Policy 495 was adopted to reach the correct results. The district court ordered that all of the awards that had gone through the process, had been calculated by the claims administrator, but had not yet been paid, would be recalculated under Policy 495. There's about, I think there were 1,400 of them, and he sent them back to the claims administrator, and the claims administrator has been going through the process of recalculating those under Policy 495. All we're asking is that the very same thing be done with these awards at issue here. Well, I had a question similar to the one Judge Costa asked, it was just trying to get a grasp around the scope of this injunction, so to grant you the relief you request, i.e. an injunction, the direction would be for the district court to apply the same post-Fifth Circuit ruling methodology to these claims that have been identified? Is that the drift of what's being asked? Yes, Your Honor. In terms of the restitutionary order that we are seeking, that's exactly right, that the district court would send these claims, these awards, back to the claims administrator to be properly calculated in accordance with the agreement, as now everyone agrees, except class counsel, but in terms of the courts, and the claims administrator and VP agree with the proper interpretation of the agreement, have those recalculated, and to the extent there was an excess, which we've shown there clearly was, to the tune of hundreds of millions of dollars, VP should be entitled to restitution, subject to any individualized defenses. So as to that number, I can't remember how many it is, what is it, 200-something, or I can't remember? Well, about 800 total. Whatever the number. So I know there's no injunction in place, but as to that universe, is there . . . nothing has occurred to those potential or putative claimants to cease and desist in your spending. I mean, everything is just kind of status quo from the time that they received the money. Is that accurate? Yes. I mean, whatever they were doing or not doing, nothing has . . . this litigation and dependency, I don't mean this litigation, this phase of dispute over the, quote, overpayments, nothing has occurred vis-a-vis any notices or anything to those potential parties about the status of their money or awards or whatever. Is that accurate? Well, I wouldn't agree with that, Your Honor. I mean . . . Well, I wasn't trying to make that argument. I'm just trying to find out. I mean . . . Yes, Your Honor. In terms of notice, VP appealed every single one of these awards, so the claimants knew that VP was raising the very argument that ultimately we prevailed on. VP wasn't able to seek judicial review because the district court erroneously precluded us from doing that with respect to the individual awards, but we did appeal from the district court's matching order and ultimately obtained that . . . ultimately succeeded in having that overturned, and we were appealing that . . . we appealed that before any of these awards was paid. So, we were appealing that we had sought an injunction to prevent this money going out the door from the district court and from this court, so we were, again, pursuing every opportunity we could and notifying class counsel at every turn, and class counsel represent the members of the class. That's the whole point of a Rule 23 settlement. The class counsel and class representatives are deemed to be standing there on behalf of and representing the members of the class. Class counsel had noticed at every stage when we filed this restitution motion and everything else we filed in the district court, we observed the service of process requirements set out by the district court. We said any lawyer entitled to receive notice needs to file a form and obtain electronic notice, and service through electronic notice is deemed to be proper service under the federal rules. We did all of that. More than 1,000 lawyers received notice of our motion for restitution. Now, if there are individual claimants who somehow claim they didn't know, that's not our fault. We can't reach out to individual members of the class and communicate with them. Our job is to communicate with class counsel, and it's class counsel's job, if they deem it necessary, to provide further information to the clients that they represent as class counsel. So there's no notice issue here. Okay. So connected to what you just said, the lawyers who may have been involved with the particular claimants, so their fees and so forth were at issue as well. Is that right? Yes, Your Honor. If individual claimants would have had lawyers that would have shared the fees, then BP would be entitled to restitution against them as well. You have an expectation they haven't spent the money? Well, you don't have to answer that. You don't have to answer that. It's not a serious question, but I get it that maybe the claimants haven't, but anyway, that's not a . . . just trying to understand the sheer mechanics of this. All right. Thank you, Mr. Hunger. We had some questions, but you've reserved rebuttal time, and we're not rushing through this, so we're just trying to get as good an understanding as we can of everything. Thank you. Thank you. All right. Professor? Chief Judge Stewart, and may it please the Court, Samuel Issacharoff for the class. I'd like to make three primary points. If I'll ask you, if you will, just try to keep your voice up good and strong in there for our benefit and . . . Yes, Your Honor. . . . the enlightened audience that's assembled. I'd like to make three primary points. The first two are procedural ones, that the formal request for an injunction is improper under the Due Process Clause. It's improper under Rule 65. It's improper as not giving notice to the parties who are at risk under many cases from this Court. The second one is that BP waived any claim for retrospective relief by not . . . only not appealing from the determinations with regard to the 793 businesses at issue here, but by also never once in ten filings before this Court and the District Court ever asking for retrospective relief in any form. And then the third one has to do with the notion of restitution. And the basic argument there is that restitution is not a right. Restitution is an equitable remedy. Restitution requires the balancing of the equities. That is why, contrary to counsel opposite's suggestion that there are centuries of precedent, there is not a single case that we have found, not a single case ever cited by BP in this in which a restitutionary order en masse has been granted by any court at any time in the United States, in Britain, in New Zealand, in Australia, in Canada, in any country that operates under the principles of equity. So that the idea that you can simply file en masse and get restitution and disregard the command of Section 18G of the Restatement, that there are affirmative defenses that have to be maintained in each case, including the right of notice, including the right to make sure that the funds have not been dissipated based upon reasonable reliance, detrimental reliance upon the receipt of the funds. Those are the three arguments I'd like to make. And if it pleases the Court, I'll start with the first one, with the question of whether the injunction is proper, or if the Court has questions, I'll take them out of order. First of all, there are 793 individual businesses here. They have been given no notice. At best, BP's expert, Mr. Gaspardo, says that he reviewed 203 files. So as to the overwhelming bulk of these, there is not even the indicia that BP is likely to prevail on the merits as required under Rule 65 for any sort of injunctive relief. The Council says notice to the Class Council should be sufficient. Well, notice to the Class Council took the form of filing in this Court and in the District Court. The filing had an appendix, an exhibit, that listed the businesses at issue. That exhibit in the public record is blank. That exhibit in the sealed record consists simply of claims numbers. We don't represent claimants in the Individual Claims Administration, and we know of no case where you can give notice to Council beyond the terms of the class representation that would suffice for any kind of restitutionary order. There is just no case that stands for any such proposition. One billion dollars in awards was paid out by the time of initial approval of the settlement by the District Court in late December, December 21 of 2012. That means one billion dollars of awards went out before there was Class Council, before there was anybody even punitively representing them. Over three billion dollars had gone out by the time of the BEL decision, Deepwater Horizon 1 in this case. These are claims that went out simply with no request, no appeals, no demand for the restitution of those claims in any form before this Court. In cases such as Parker v. Ryan from this Court that we cite, it's a long-established proposition that if you want an injunction under Rule 65, you have to give notice. You have to give direct notice to the party that will be adversely affected by the injunction. You cannot have an ex parte proceeding. You cannot have a proceeding in which you don't know in which you tie up people's properties. That's the basics of due process. We cite Connecticut v. Doar. We cite North Georgia Finishing v. DICAM. But we could cite a hundred Supreme Court cases for the proposition that you can't take people's property, you can't lean against their bank accounts, you can't seize their assets without some kind of notice. The reason that this is so important is that if you freeze the account of businesses and the recovery that they got is commensurate to the size of their business, you freeze their business, you freeze their accounts, you put them out of business. And it is a shocking proposition, unprecedented, that you can impose a lean on an ongoing business that would basically shut it down without even giving them notice. In the data access opinion, Deepwater Horizon 6, this quote cited with approval a footnote, footnote 5, from Judge Clement's decision dissenting from the denial of rehearing on bonk in Deepwater Horizon 3. I'm using that terminology. Deepwater Horizon 3 was the merits of the BEL application. Judge Clement says nothing in this opinion, and she's in dissent, prevents BP from going back and reclaiming as to fraud on an individual basis. Going back and saying this award was improper, there was fraud or there was mistake, something of that sort. This court in the data access opinion, in Chief Judge Stewart's opinion, says that is the proper way to go. If there is a problem with an award, you can always go back to get it. Now, didn't, Mr. Hungar makes a big point, but what about the non-profits? Wasn't that a situation in which there was the ability to go back and challenge the award? There is a huge difference between the non-profits and here. In the non-profit case, they appealed. They appealed. Now, the appeal does something important, even when the money is paid. Under restatement section of restitution section 18, you do not have to stop the money from going out to preserve your right to restitution. That's why the restatement is absolutely clear. You do not have to post a supersedious bond. You do not have to seek an injunction or anything of the sort. As long as there is an appeal, there are no vested expectations that this is my money. With regard to the non-profits, they maintained the appellate chain. With regard to these cases, there has never been an appeal docketed. There has never even been a judicial request made for the return of the money. In Deepwater Horizon 1, in Judge Clement's opinion, she says, what does BP want? Why is it that we are reversing the district court in Deepwater Horizon 1? She says, BP seeks a stay of continued distribution of its assets. Continued distribution of its assets. In footnote 14 of Deepwater Horizon 1, in Judge Clement's opinion, she refers to BP's request, which is now being granted by the district, by the court of appeals, as a targeted injunction, and she approves it. The targeted injunction makes no mention of getting money back from anybody. The targeted injunction is there should be no payments, and then there's a category of activities, such as construction, lawyers, various categories, and what's called the NICS codes, the formal Department of Labor codes for these particular businesses. But there is never a request for money to come back. There's no request made in the November 21, 2013, emergency motion to enforce, which is the post-BEL. There's not even a request made until June of 2014. In May of 2014, May 19th of 2014, Judge Clement, again, in the dissent from the denial of rehearing en banc on the BEL appeal, says that there are only the individual actions against fraud that are left, and that's the position that she takes in dissent, but that's cited with approval by this court in Deepwater Horizon 6, in the data access case. Where did you make this waiver argument in front of Judge Barbier? And I guess even going back to your first argument about notice to all the claimants, the 700 plus claimants, I just saw that in a . . . there was a footnote that raised something like 20 defenses in the district court. Is that the only . . . So for both of these arguments you've made, where were they properly briefed in the district court? In the district court, we said, and Your Honor is citing exactly to the right document. In the district court, we said, we are addressing only the questions about the interpretation. We think that there's individual questions. Those have to be taken up by the individuals, and they will have the following defenses that we can anticipate, and we drop a footnote and we list all those defenses. That's correct, Your Honor. Because it seems, especially going back to your first argument about notice, if that had been a more prominent issue in the district court, it's something that might have been burdensome, but was fairly easily correctable by BP. I mean, if that's the basis for our ruling, it goes back. They send out, what is it, 792 notices, and then this whole issue resumes in the district court, and ultimately back here. Well, Your Honor, I think the reason they didn't do that, they could have done that from the beginning, because they have the information. We don't have the information. It's not reflected in the record, but as soon as we got served with this, we went before the district court, and we said, we don't even know who these individuals are, because all we have is file claim numbers, and we don't have that information because we don't represent claimants in the individual cases. And we asked the district court, what are we supposed to do at this point? What does this mean? What is our responsibility? And we were told to take this up as a matter of law. And so we filed the brief that Your Honor is referring to, which says, in a footnote, says, if the individuals were on notice, if the individuals had the ability to represent themselves, we anticipate that they would raise all these defenses, but we are in a difficult position as class counsel because we don't represent individual claimants in the processing of their individual claims, which is why in a typical... There have been many appeals to this court, as this court is well aware. In most of them, we are not present. So in the nonprofit case, they specifically asked me to argue on their behalf. Normally I would not have handled that. Class counsel would not have handled that because that's a matter of an individual award, but because there was a policy issue behind it, that's why we appeared. So the answer is that we didn't know what position, what posture we were in. Are you saying the D.P. has the wrong people in court? They needed to have had these 793 people in here to get this restitution? Well, we think it's not available anyway, but we think that that's at the very least due process. If they want to freeze their property, if they want to seize their property, if they want to have the force of this court impose a limitation on the exercise of private property, they have to give them notice, they have to give them an opportunity to be heard, and this notice is constitutionally inadequate. Let's shift gears. I'm going to have to go back and reread what was said about that. I may have seen it obliquely, but I don't remember it as the front and center headline proposition put forth from your side. But we got it for purposes, but the clock's running. So let's shift to your next area. Okay, the next area is the waiver point. I've made that point, and now I'd like to turn to the restitution proper point. Counsel refers to restitution as a right. Counsel, in his brief, refers to the burdens of a party seeking restitution as being slight. Both of these are wrong. Restitution is an equitable remedy. And the reason that restitution is not available here primarily is that there is a reasonable, honorable expectation on the part of the recipients that they were done with this case, that this was their money, they were allowed to get on with their lives. If one looks at Section 65 of the Restatement of Restitution, Section 65 says that if you change your material circumstance in reliance upon the money coming to you, restitution is not available. The importance of Section 65 is that it's basically a principle of detrimental reliance as applied in the equitable context of restitution. It says if I get money and every reasonable person in my circumstance would say this is your money, I'm entitled to go use it, particularly a business. I commingle it. I decide to expand inventory. I decide to do whatever I do as a business because now I have $30,000 that I didn't have before. And the importance of that is that there has to be some reason for a person to know that the money is at risk. That's the principle of restitution. And what are those principles? Well, number one, Section 18 of the Restatement says if it's still up on appeal. If it's still up on appeal, obviously it's not over. Nobody can say, well, I want it at the district court, therefore the whole game is over because there is an appeal that's left. But the general policy was on appeal. All these claims were reviewed, at least through the internal process. They couldn't get up higher because of Judge Barbier's ruling. So it just seems like this detrimental reliance requires looking at each case, whether someone detrimentally relied. So on this record, as you're saying, these individuals weren't before the court because there was no notice provided. How could we as an appellate court make that kind of ruling? I don't believe you can, Your Honor. I believe that the detrimental reliance, which let me go back a step. Section 18G, which I mentioned before of the Restatement on restitution, says there are affirmative defenses which have to be weighed in every restitution case. And the reason that that's important is was there detrimental reliance? Was there notice? Now, Section 69, let me move to that one for a second. Section 69 of the Restatement says you have to give notice, and it has to be the kind of notice that puts you, makes you aware that you're at risk so that you don't go and expand your business in reliance upon this money because you know that you're at risk. How are you at risk? Well, there's a couple of things that the Restatement tells us. If there's an appeal, it's number one. If there's fraud or mistake, it's number two. And that's what Judge Clement invited in her dissent in Deepwater Horizon 3, and that's what Judge Stewart referred to in Data Access. Mr. Hungar's brief says, what if you had a claim for $1,000 and you got a check for $10,000? Well, that's a mistake. The Restatement addresses that directly. Nobody can have a reasonable expectation in the recovery of funds when you've gotten ten times as much as you believed you were entitled to. But these individuals had no reason to believe. Why? Because they signed a release that said nothing that happens here and after will ever affect you. And after the briefing, and so I apologize that this case is not in our briefs, but this case has a strange history because of the re-argument, but this court handed down a case called Elton Johnson or referring to an Elton Johnson. This is another of the listed under the BP Deepwater Horizon cases. In that case, the court said that a claimant who gets an offer sheet from the Gulf Coast Claims Facility, the precursor to the court-supervised settlement fund, the claimant who gets an offer sheet who doesn't even execute it yet but who seeks to enforce the terms of it when BP wants to pull out of it, has a reasonable expectation that that's what the offer is and is entitled to enforce that contract. Here, by contrast, we have Recital H of the settlement agreement. Leave aside the release. Recital H speaks of this being a final binding contract. We have Section 4.4.10.3, which says the payment, the execution of the payment, not the signing of the release, but the receipt of the payment, is full consideration for the claimant's claim. All of that, regardless whether we go under contract principles, it says the binding contract of release. Well, that's what I was going to ask you. It seems like now you're saying more that all these different expectations from the release and the settlement agreement factor into the restitution analysis as opposed to just being a complete contractual bar, which is how Judge Barbier read it. Judge Barbier read that the settlement agreement and the release combined formed a binding contract, and he, using his oversight of this and the specialized knowledge that he has said, I think that a reasonable person under these circumstances would view this as a final and binding contract. I'm offering another argument, which is we are here on an appeal on a restitution claim, and independent of restitution is a different, if we go back 500 years in Britain, restitution is a different body of law than contract. Contract is at law. Restitution is at equity. So they are here under equity. If we were in old courts, we would sit differently, and this would be a court of equity. As a court of equity, this court would not grant them the relief because a reasonable expectation had been formed, regardless whether it rises to the level of a full contract or not. Elton Johnson raises— But Judge Barbier didn't really make that in the context of an equitable analysis. It seems to me one practical response to a couple of your arguments today is to say, well, send it back. Let BP give all these people the notice that you think is required, all 792. Let those people and their lawyers, whoever else they want to bring in, come before the district court, and then the district court can balance these equities and figure out what the expectations were, which is largely going to be an individualized inquiry, at least as to some of these defenses. I agree that if waiver is not a problem, that is, the fact that they let this sit and they never took this appeal and all this time has passed. Some of these people got paid three years ago, right? So even under concepts like 60B, this would be way out of time. But if waiver is not a problem, then at the very least you would have to send it back if they want to pursue this and they want an injunction for individualized notice because otherwise it's unconstitutional. And if it were to go back, it would have to be individualized if it's a restitution claim under the express language of the restatement on restitution. And there's also old cases. I mean, after the last argument, I was looking back at old restitution cases from this court. I found one, Equilence v. Hentz from 1981, 634 F. Second, 850, where this court says if somebody starts using the money to change the circumstances of their life in reasonable reliance, there's no restitutionary claim available. That's the kind of particularized inquiry which Section 18G of the Restatement of Restitution mandates. And so under these circumstances, if there's no waiver, the very best that BP could do here is vacating and remanding for individual notice and individual determinations as to the restitution that's available. We think it's not necessary because they didn't preserve it through the avenues of appeal and restitution should not be a way of getting around appellate review. They make the claim that they were barred from ever filing an appeal. They were barred because they could not get this in the court. Hang on where you are. Madam Clerk, give him two additional minutes, and I'll do likewise for BP's side if they need it because you're out of time. Okay. Thank you, Your Honor. I want to get through this. Go ahead. So let me just make the final points then. If BP wants to raise this, they have to do it properly. They have to give individuals notice. Keep in mind the injunction they seek not only goes to the claimant. It goes to the claimant's lawyers, accountants. We as class counsel, we couldn't even find who those people are. We have no idea who those are. How does the accountant identify these whatever they are, 700, 900, 793, whatever? How does the accountant identify, you know, that number and do the math and all of that calculation? I'm not sure I understand how that process occurred. The methodology used by Mr. Gaspardo is opaque. But the key thing, I think, is not only that he reviewed only a subset here, but the conclusion he draws is exactly the wrong one for restitutionary purposes. The conclusion he draws is that these are cash flow-through businesses. They don't retain huge amounts of cash. I don't know what business retains huge amounts of cash. It's usually a failing business. But they don't retain cash. Of course they don't retain cash. These are small businesses who it comes in, it goes out. That's the nature of the business. And so if you take Mr. Gaspardo's analysis, what you find is that to give an injunction against the use of their assets is a death blow, is a death blow to the business. And it would be outrageous and unprecedented to do that without individual notice, to do that in this kind of en masse proceeding. Was there a traversal of that? Let's assume we get past your notice, you know, argument about the notice, and we see that as just a precursor of more litigation back down, back up here, et cetera, et cetera. But for whatever reason, for the moment, let's move past the notice. But into the mechanics of this deal, you argue the release. BP says, well, we're not trying to get out of the settlements, i.e., the release. We're trying to enforce it, interpret it properly. There was a judicial intervention, a judicial order, which ordered payment on other than the proper accrual basis, that sort of a supervening, over-the-top, never could have been contemplated, wasn't contemplated, but such a judicial imprimatur on this whole process, that that in and of itself ought to trigger the restitution. Everybody's agreed that from henceforth the proper accrual is being made on all these claims, yada, yada, yada. So succinctly put, getting past your notice issue, not to release, what portions of this release are not to release? The settlement agreement itself most succinctly, you say, bars the restitution claim that they are seeking to make. On Record Exhibit page 8 of the plaintiff's, of the appellee's, Section 4.410.3 establishes that this is full payment in, the payment constitutes full consideration for the claim. Under the terminology used by this court of the reasonable expectations in the Elton Johnson case, that is the basis for an individual to form a reasonable expectation that he or she is done with litigating with BP over this. I stress that restitution is a balance of the equities. That's the main thrust of the restatement of restitution. That's the thrust of Section 18. That's the importance of 18G. That's the importance of Section 65. Under the balance of the equities, no individual who's given a release who says, this is over and done with, nothing that happens on appeal will affect you. So you would say if the court, if our court disagreed with the contractual bar basis of the district courts to now that the Fifth Circuit should nonetheless rebuff the restitution based on equitable doctrines and considerations that are time immemorial. Is that synthesized? Is that what you're arguing? They waived it because they are seeking an injunction improperly, and most of all it would be deeply unfair to these businesses who have done nothing wrong. They filed the claim. They got paid. They went on with their lives. That's what the legal system is supposed to let them do. They did it. They continued their businesses. And now three years later, some lawyer, namely me, who they've never heard of, is standing before a court trying to defend their interests, and I don't even know who they are. That's an outrageous outcome under the principles of equity. That should not be allowed, Your Honor. But it's a heavy balance on the other side that they might have had a million or two million or, what, $14 million that the courts now said the settlement didn't provide for. I mean, that's the balancing that I don't think our courts should do in the first instance. That's the equitable balance. And they say it's of right, and we say that's not what the principles of equity allow. The equities, it's not a contract claim they're making. What they're saying is it's equitable. And once they say it's equitable, you have to balance the equities here. All right. All right. Thank you, Your Honor. We have the argument in brief. And, Mr. Hunger, I had given the professor two extra minutes and, you know, equal opportunity. You've got the two if you need them. So have at it. Thank you, Your Honor. Let me address, if I may, the waiver arguments first. There's no waiver by not seeking retrospective restitutionary relief before you've gotten reversal of the orders that created the problem in the first place. The restatement, Section 18, Comment H, makes clear the right to seek restitution doesn't even accrue until after the reversal. And here, as I've explained, it wasn't until May of 2014, when the district court had decided how these claims should properly be calculated, that BP was able to show the unjust enrichment that gives rise to the right to restitution. We filed our request the following month. The idea that there was no notice to class members is simply impossible to maintain given the whole predicate of Rule 23, which is that class counsel represent the class. In the Deepwater Horizon 1 case, where we were challenging the underlying interpretation, we did precisely what we did here. We didn't try to serve individual class members who were interested. We couldn't. Defendants aren't allowed to reach out to individual class members, some of whom don't have their own lawyers and are only represented by class counsel. The way you give notice to class members who are interested in a particular dispute is by serving class counsel. That's the whole point of a class action and of a Rule 23 certified class. The idea that somehow you give notice to individual class members would upend the entire Rule 23 system. Rule 65 of the Federal— This is unorthodox. Do you have any cases saying that in a Rule 23, the defendant who's paid out the money doesn't need to give individual notice to restrain particular funds? Well, again— It's unusual that the defendant is seeking the injunction to get the money back. Well, so it's important to separate the injunction and the restitutionary right that we're talking about. The district court ruled as a categorical matter we can't seek restitution from anyone. What we're asking for is a ruling from this court overturning that error and saying, yes, EP is allowed to seek restitution to be sure. An individual claimant might have an individualized defense based on the equities if they can show that there's some reason why it would be inequitable in their particular circumstance. But if you get the injunction, their funds are restrained before they have an opportunity to present that defense. Well, again, the injunction is based on the irreparable injury to BP. Again, we need to separate the injunction and the restitution. The district court intertwined them, which is why they're both properly in front of this court under 1292A1. But there are also independent jurisdictional bases for that. But the fact is, even if you remanded for the district court to have further proceedings on the injunction, which we don't think is necessary, but if you did that, that wouldn't mean that this court should not reverse the district court's categorical refusal to let BP seek restitution at all. You could reverse that, send it back for further proceedings with respect to the injunction and further proceedings with respect to any individualized defenses that an individual claimant might have to show that in their particular case, the equities don't justify restitution. But again, let's remember why we're here. We're here because the district court made not one, arguably not two, arguably three separate errors, all of which have been overturned by misinterpreting the settlement agreement initially, by refusing to prevent this money from going out the door until BP had exhausted its appellate rights, and by refusing to let BP to proceed with individual appeals and forcing it to proceed only by way of the categorical appeal to the interpretation. Council says that we somehow waived by not pursuing individual appeals. The district court blocked us from doing that. We can hardly be penalized for that, and we were already at that time appealing from the underlying interpretation, which class counsel well knew, since they represented the class in that case, even though only certain members of the class were interested in that issue, which pertained only to business economic loss claimants, not all members of the class. We didn't hear them complaining that somehow we had failed, we had waived our rights to challenge that interpretation because we hadn't notified individual class members. And again, they didn't even raise this notice argument in the district court. So the notice argument and the waiver arguments fail for multiple reasons. With respect to the one other point on the notice, Your Honor, counsel repeatedly said that they don't know who these claimants are. That's simply not true. As Chief Judge Stewart will recall in the data access appeal that we argued earlier this year, where the court said it didn't have jurisdiction, the whole point there was we were fighting about whether both sides should get access to information about individual claims before the claim is awarded. It was undisputed in that appeal, and it's perfectly clear from the terms of the agreement, that both sides, class counsel and BP, get full access to the claim once the award issues. So for every single one of these 793 claimants, BP and class counsel know precisely who they are and are equally positioned to reach out to them individually if individual notice is necessary. But of course, BP is constrained by ethical rules from reaching out individually to individual members of the class. Class counsel is not, since they represent them. So again, the idea that they somehow couldn't notify these individuals if individual notice is necessary is preposterous. The Johnson case is completely irrelevant. It doesn't have to do with this settlement agreement. It doesn't have to do with this release. It didn't have to do with a right to restitution because of reversal of erroneous orders. It's completely beside the point and says nothing about the proper answer here. At the end of the day, the only reason we're standing here and the only reason BP's shareholders have been wrongfully deprived of hundreds of millions of dollars that should never have gone out the door, and everyone agrees that it should never have gone out the door under the law as it stands and under the proper interpretation of the settlement agreement as it was written from day one, and that reminds me of Chief Judge Stewart. One of your questions was talking about an unpredictable interpretation, but what this court held and what the district court ultimately held on remand is what the parties intended is precisely the interpretation that is now reflected in Policy 495. So this was not some unimaginable interpretation. This was the original intent of the language and of the parties' agreement, and the problem was it was misinterpreted for a time and injury resulted from that judicial misinterpretation. So the equities are on BP's side. If there are individual equities that might countervail that in an individual case, that can be addressed on remand in an individual case, but as a class-wide basis in terms of whether BP should be entitled to seek restitution, the law is clear. The Supreme Court and counsel says that this is all a matter of equity and there's no such thing as a right, and while, again, individual defenses can be raised, the Supreme Court has been quite clear. In Arkadelphia, which is cited in our briefs, the court said, quote, the party against whom an erroneous decree has been carried into effect is entitled, entitled, in the event of reversal to be restored to what he lost. And the court went on to say that every court has inherent power to correct that which has been done by virtue of its process. If the phrase equal justice under law has any meaning, BP is entitled to seek restitution. Thank you. Thank you, Mr. Turner. Thank you to counsel on both sides for your briefing and spirited argument. We will take the case as submitted, and we will consider it and we'll decide it as soon as we can so that. . . Do you think we should make him come back a third time? Well. . . As I was saying, we will take it as it's been decided as soon as we can so that you all can get back to doing those things which you do best. And so we will do our duty to get it decided without undue delay because of the obvious importance to both sides so we have no reason to hang on to it any longer than we need to, right, wrong, or otherwise. Our goal will be to try to get something decided more sooner than later so whatever you have to do about it, you can. So that said, again, we appreciate the briefing and the argument both times in the case. We are aware of those and have listened to the other oral arguments so to the extent we may not have asked you a question about it, we've listened to the argument and questions from that one plus the briefing here and the rest of it. So I think we've got it and we'll do our best to send you on back across the plaza. With that, this completes the work of this panel and for. . .